**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DONOVAN GEORGE DAVIS and DIANA ELEISE DAVIS ,**

                **Plaintiffs,**

**-vs-**                                                              Case No.  6:03-cv-1519-Orl-31KRS

**PHILIP B. WILLIAMS and DEPUTY E. BECHT,**

                **Defendants.**

## ORDER

This matter comes before the Court on a Motion for Summary Judgment (Doc. 99) filed by Defendant Sheriff Phillip B. Williams (the "Sheriff")[1] and Plaintiffs' Response thereto (Doc. 105). This case began in 2003, when Plaintiffs filed a Complaint alleging, *inter alia*, violations of 42 U.S.C § 1983 ("§ 1983").[2] On May 5, 2005 this Court issued an Order granting summary judgment to all defendants and holding that plaintiffs had not produced sufficient evidence to establish a constitutional violation, as required for liability under § 1983. (Doc. 81)  However, on June 7, 2006 the Court of Appeals for the Eleventh Circuit issued an Order reversing that decision and remanding the case for further proceedings. *See Davis v. Williams*, 451 F.3d 759 (11th Cir. 2006).

---

[1] The Sheriff is employed by the Brevard County Sheriff's Office ("BCSO").  This case stems from the actions Deputy Edward Becht ("Becht"), who is also employed by BCSO.

[2] Plaintiffs also claim violations of Florida law, however, those claims are not challenged in this motion and therefore need not be discussed here.

Therefore, the Sheriff has now filed a second motion for summary judgment, alleging that Plaintiff has failed to provide sufficient evidence of policy or custom to establish his liability under § 1983.

**I. Background**

The Court of Appeals found the following facts in its Order:

On the evening of Davis' arrest, the Davises were hosting a "family get-together." At one point, Davis noticed flashing police lights outside his house. Concerned that some family members who had not yet arrived may have been in an accident, he went outside to investigate. He walked down his driveway, Davis Lane, which is approximately 1,000 feet long, towards the police lights. Unbeknownst to Davis, Deputy Becht and Deputy Barrett Bright were conducting a traffic stop. The deputies had initiated the stop at the street connecting to Davis Lane, and followed the vehicle onto Davis Lane, where it came to a stop 250 feet from Davis' front door.

As Davis approached the deputies,[3] with his hands in the air, the following exchanged occurred:

> Davis: Officer I'm the homeowner. What's the problem.
> Becht: Get away from here.
> Davis: Officer, I live here.
> Becht: Leave now.

Davis asked "what's wrong, " but nonetheless, "turn[ed] away and . . . walk[ed] up to the concrete" closer to his house. He noticed, however, that the police car was blocking Davis Lane, forcing cars to drive onto another part of his property, which ended in an unlit lake. Believing this to be dangerous, Davis asked Becht if Davis could direct traffic to avoid possible accidents involving the lake. Becht's response was: "Leave now or I'll arrest you." When Davis asked Becht why he would be arrested, Becht again ordered him to leave. Davis turned toward the house, but asked if he could speak with Becht's superior and one of Davis' guests asked for Becht's badge number.[4] Becht's response again was to tell Davis that if he continued to say anything, he would be arrested. Accordingly, Davis started toward the house. At that point, with Davis' back to Becht and Davis heading toward the

---

[3] The record indicates a conflict concerning Davis' demeanor as he approached Becht. For purposes of summary judgment, we accept Davis' version that he did not talk in a loud voice or yell at the deputies.

[4] Davis had exited the house with one of his guests. Davis states that no other guest exited the house until after he was arrested.

>    house, Becht and Bright grabbed Davis from behind, twisted his arms behind his back and handcuffed him. Davis tried to tell Becht that he had an injured shoulder and was in pain. Becht's response was to push his arm "hard way up," causing greater pain. Davis was then handcuffed, and forced to the ground by Becht pushing on his bad shoulder.
>    Becht dragged Davis to the police car, which was a canine unit, and forced him down on the ground again, while pulling hard on his shoulder. In the meantime, Bright pulled the police dog out of its cage in the back of the unit and Becht dragged, pushed or threw Davis very hard into the dog cage causing him to hit his head on the top of the car as he entered.[5] Still handcuffed, Davis slid across the bottom of the cage, hit his head and shoulder on the opposite side of the cage and had to lay down on the metal floor of the cage. Davis was then driven in the cage, not to the police station, but to a nearby parking lot to wait for another vehicle to transport him to the police station. After the incident, Davis' neck and thumb were swollen, and he could not move his arms. He was diagnosed with a torn rotator cuff in his right shoulder, for which he underwent a surgical repair.

*Davis,* 451 F.3d at 763-764.

**II. Standard of Review**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to

---

[5] Although Becht claims a crowd was walking towards the vehicles and that Davis was yelling for them to come help him, Davis denies this and claims he only called for his wife and asked her not to leave after he was arrested.

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis,* 451 F.3d at 763 (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

**III. Legal Analysis**

Plaintiffs allege that the Sheriff is liable under § 1983 for violations of Davis' Fourth Amendment rights. In order to establish municipal liability under § 1983, Plaintiffs must first establish that one or more of Davis' constitutional rights were violated. *McDonnell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 1987).  The Eleventh Circuit has already ruled that Plaintiffs have offered sufficient evidence to support a violation of Davis' constitutional rights through false

arrest and the use of excessive force under the summary judgment standard. *Davis,* 451 F.3d at 767.   Therefore, this Court will not revisit those issues.

The Sheriff correctly asserts that the doctrine of *respondeat superior* does not apply to claims arising under § 1983. *Engelleiter v. Brevard County Sheriff's Dept.,* 290 F. Supp. 2d 1300, 1308 (M.D. Fla. 2003).  Instead, the Sheriff's liability under § 1983 must be established by evidence that:

> (1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, *or* (2), the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, *or* (3) the final policymakers of the local governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, *or* (4) the final policymakers of the local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate employee.

*Sherrod v. Palm Beach County School District*, 424 F. Supp. 2d 1341, 1344 (S.D.Fla. 2006) (emphasis added).

The Sheriff argues that Plaintiffs have failed to produce sufficient evidence of any policy or custom that caused, or was the moving force behind, the violations of Davis' constitutional rights. A municipal policy or custom is "a persistent and wide-spread practice." *Church v. City of Huntsville,* 30 F.3d 1332, 1345 (11th Cir. 1994).  Plaintiffs must establish, not only that the policy or custom existed but also that "actual or constructive knowledge of such custom" is attributable to government officials. *Id.*  Therefore, "random acts or isolated incidents" are generally not enough to establish municipal liability. *Id.*  However, in *Depew v. City of St. Marys*, 787 F.2d 1496 (11th Cir. 1986), municipal liability was established on the basis of five prior incidents of excessive force because the city had knowledge of these incidents and failed to take remedial action. *See*

*Church,* 30 F.3d at 1345.  Plaintiffs allege that the Sheriff had several policies or customs that led to the violation of Davis' rights, and the Court will address each one individually.

    *1.  Failure to Properly Train*

Plaintiffs allege that the Sheriff failed to properly train his deputies in the following areas: (1) when to properly arrest for "resisting without violence" or "obstruction of justice"; (2) not to place suspects in canine patrol vehicles; and (3) how to check the tightness of handcuffs.

It is well established that inadequate training can, in limited circumstances, provide the basis for municipal liability under § 1983.  *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 407 (1997).  However, Plaintiffs must show that the Sheriff acted with deliberate indifference to the known or obvious consequence of his actions.  *Id.*

> [C]ontinued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the deliberate indifference – necessary to trigger municipal liability.

*Id.*  Plaintiffs attempting to establish liability for failure to train, must show that the training program was inadequate, and not simply that it was administered poorly on one occasion.  *See id.*

> [T]he existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the "moving force" behind the plaintiff's injury.

*Id.* at 407-08.

The Sheriff may also be held liable for a failure to train if the need for training is obvious and the lack thereof is likely to result in violations of constitutional rights.  *City of Canton v. Harris,* 489 U.S. 378, 390 (1989).  For example, "the need to train officers in the constitutional

limitations on the use of deadly force can be said to be so obvious that failure to do so could properly be characterized as deliberate indifference." *Id.*

In this case, Plaintiffs present no evidence that the Sheriff had notice of a problem with any of his training programs. Plaintiffs argue that the fact that, in over half of the instances where an arrest was made for resisting without violence or obstruction of justice the charges were dropped, is evidence that the deputies have not been properly trained on these laws. However, there is no evidence indicating why the charges were dropped in these cases. Plaintiff claims this trend is "staggering" but offers no support for that characterization. The standard for arrest is probable cause, while the standard for conviction is beyond a reasonable doubt. It is not surprising that in many cases there may be enough evidence to sustain an arrest, but not enough to support a conviction. Furthermore, State Attorneys have vast discretion on which charges to pursue. Thus there is simply no basis to infer that this statistic is attributable to poorly trained officers.

Plaintiffs next allege that there have been "literally hundreds of complaints" filed with the BCSO in the last year. But again, there is nothing to indicate how these complaints are relevant, if they were valid, or how they indicate poor training of deputies.

Plaintiffs' allegations of problems with Becht, and the inappropriateness of his training Bright, do not amount to problems with the training program itself. At most they may indicate an isolated negligent administration of the program - which is insufficient to support liability under § 1983.

With regard to the failure to train officers not to put suspects in canine patrol cars, there is no evidence of prior incidents that would put the Sheriff on notice that additional training was required in this area.

Finally, with regard to checking the tightness of handcuffs, there is again no evidence that the Sheriff was on notice that additional training was necessary in this area.

*2. Supervision and Discipline*

Plaintiff alleges that the Sheriff "acted with deliberate indifference to its officers' known civil rights violations" and that "BCSO supervisors displayed a deliberate indifference to complaints about Officer Becht."

First of all, with regard to Officer Becht, the failure to discipline one Officer for two incidents occurring prior to this one, does not establish a custom or policy.

Second, with regard to the alleged "known Civil Rights violations" the Plaintiff does not point to any specific incidents. Instead, Plaintiff provides a list of citizen complaints, most of which are determined to be unfounded and very few of which have anything to do with false arrests or excessive force complaints. Furthermore, the Plaintiffs admit that the BCSO investigates citizen complaints, but apparently is unsatisfied with the procedures followed in these investigations. However, Plaintiffs point to no specific evidence that would indicate how these procedures are lacking. In light of the fact that the complaints were investigated and found to be unsubstantiated, this Court cannot label these incidents as "*known* Civil Rights violations." Again, there is no evidence of notice that actual violations were occurring – only that complaints had been made.

*3. Ratification*

Finally, Plaintiff argues that the Sheriff should be held libel on a theory of ratification because he failed to order an internal investigation into the allegations surrounding Davis' arrest.

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*St. Louis v. Praprotnik*, 485 U.S. 112, 127 (U.S. 1988).

Plaintiffs compare this case to *Kimbrough v. City of Cocoa*, 2006 U.S. Dist. LEXIS 83458 (M.D. Fla. November 16, 2006), in which this Court held that Plaintiffs could proceed to trial on a theory of ratification by the City of Cocoa because it failed to conduct an internal affairs investigation of the incident, which involved the arrest and severe beating of a suspect who later died as a result of his injuries. However, this case is distinguishable in that, in *Kimbrough* an investigation had been conducted by the Florida Department of Law Enforcement, after which the City refused to conduct an internal investigation. This Court held in *Kimbrough* that the results of that investigation put the City on notice of both the officers' actions *and* their motives, and that failure to take any action in light of that knowledge could be seen by a jury as ratification of both. *See id*. at *26-27

In this case, however, there is no evidence that the Sheriff ratified Becht's motives. It appears that an investigation was conducted and that the investigation was fruitless because the investigators could not get Becht to "change his story." Although the investigation may have been poor, even negligent, Plaintiffs have not produced evidence sufficient to support a claim based on ratification in this case.

**IV. Conclusion**

Plaintiffs have supplied insufficient evidence of custom or policy to support a claim under § 1983 against the Sheriff. Accordingly, it is

**ORDERED** that the Motion for Summary Judgment filed by the Sheriff (Doc. 99) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 5, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Unrepresented Party